GEORGE H. LESTER *et al.*, administrators, plaintiffs in error, *vs.* THE GEORGIA RAILROAD & BANKING COMPANY, defendant in error.

Inasmuch as the plaintiffs' intestate accepted the check of Jones, the treasurer, for the balance due him on certificate of deposit, the bank was only bound to pay that check in such funds as Jones, the treasurer, had on deposit therein, and if the holder of that check declined or refused to receive in payment thereof such funds on its presentation, that was not such an appropriation of the funds of the drawer of the check in the hands of the bank to the payment of the plaintiffs' debt, as would preclude the bank from paying over to the drawer of the check the balance due him by the bank in closing up his account; the plaintiff, by his own act, refused to have the funds of the drawer on deposit in the bank appropriated for the payment of that check, conceding that the offer of payment in Confederate Treasury notes was an acceptance by the bank to pay the check in that currency. The facts of this case do not show such a *wanton* or *fraudulent* refusal of the

Lester *et al. vs.* The Georgia Railroad and Banking Company.

bank to pay the holder of the check in the funds deposited by the drawer thereof as would make the bank liable.

Although we think the Court erred in its charge to the jury, in relation to the question of tender, and in relation to other points involved in the case, still, the verdict was right, under the law applicable to the facts, as disclosed by the record, and we affirm the judgment of the Court below in refusing a new trial.

Bills.    Acceptance.    Evidence.    Before Judge Gibson.
Richmond Superior Court.    June Term, 1870.

L. J. Dupree brought assumpsit against the Georgia Railroad & Banking Company upon a draft in his favor by John Jones, State Treasurer, for $4,981 95, on said company, drawn on the 3d of April, 1862, averring that on said day the company accepted it, but afterwards, on the 24th of December, 1865, refused to pay it.    There were other counts in the declaration charging the bank on deposits made and refusals to repay on demand, which will sufficiently appear hereafter.    The defense was that Jones had no funds in the bank but Confederate currency, which it offered to pay, but Dupree would not take it, and that the last presentation was after Jones had closed his account, without notice to the bank that said draft was out.    The acceptance of the draft and the alleged deposit were denied.    Dupree's testimony was taken by interrogatories.    He afterwards died, and his administrators were made plaintiffs.    On the trial those interrogatories were read.    He testified, that on the 18th of February, 1862, he deposited in said bank $10,000 00 in bank notes and various bonds, to be invested by its cashier in bonds of the State of Georgia; the deposit was forwarded to Jones, the State Treasurer, who returned $5,000 00 in bonds of the State and said draft, saying he could not furnish more bonds. The draft covered the extra $5,000 00, less expenses.    Some time after April 1st, 1862, this draft "was sent to the bank for acceptance, and was verbally accepted."    Soon after Dupree demanded payment on it, and was offered Confederate money, which he refused, because he had not deposited such money.

It was admitted that the funds deposited were twenty per cent. below par when deposited, and Confederate notes were then forty per cent. below par, and that gold, when purchased with Confederate currency, was at a premium of fifty per cent. on the 18th of February, 1862, and of seventy-five per cent. on the 3d of April, 1862.

For defendant, its cashier and teller were offered as witnesses. They were objected to upon the ground that they were incompetent, because Dupree was dead. The objection was overruled. They testified that from April, 1862, till the war closed, the deposits of the State Treasurer, Jones, were in Confederate Treasury notes or in paper collectable in that currency; that said draft was presented on the 10th of March, 1864, and payment in said currency was offered and he refused that currency, demanding Treasury notes of the State; they did not remember to have ever seen the draft before; never promised at any time to pay it, nor did they know that any officer of the bank ever did. Jones closed his account on the 17th of November, 1864, drawing out $25,137 22, they not knowing this draft was outstanding.

The president of the bank testified that no officer of the bank had authority to accept checks or drafts, nor was there any such usage. The letters of Dupree and the cashier were read in evidence, but they cast no great light on this issue. Dupree's private account with the bank begun in 1861, and closing, balanced, in January, 1863, was shown by a transcript from the books of the bank, and it, with his checks, were read in evidence. This transcript was objected to because the books were the best evidence, but the objection was overruled.

The Court charged the jury, and their verdict was for the defendant. The charge and refusals to charge, so far as pertinent, appear in the motion for a new trial, which was asked for upon the grounds:

1st. That the verdict was contrary to law, etc.

2d. That the Court erred in allowing the bank officers to

testify, and in allowing said transcript to be read as evidence.

3d. That the Court erred in charging the jury, "That if the money was deposited in the name of, or transferred to Jones, the plaintiff has no right to recover on the original deposit. When a draft is drawn against funds deposited by the drawer, the holder is entitled to be paid only out of that kind of funds. If such money as the drawer had in bank at that time was refused by the holder, that was a tender and discharged the liability of the bank. The verbal acceptance of a check by the teller of the bank does not bind the bank unless authorized to do so by the directors or officers controlling the bank, or some regulation of the bank. If, when Mr. Dupree presented the check for payment, the proper officer of the bank offered to pay it in Confederate Treasury notes, and he refused to receive them, it was just as if he had said, "No, as to payment in other funds, I will go back on Jones, the drawer," and the bank had a right to expect that he had done so, if no other steps were taken or proceedings had. The holder of a check on a bank cannot sue the bank unless the check has been accepted by an officer authorized to do so, and the authority must be specially shown. It does not belong to the ordinary functions of any officer (unless proven).      *      *      *      *      *
If plaintiff sent funds to defendants and directed that a certificate of deposit of the amount be issued to John Jones, Treasurer, and that was done, then plaintiff has no further claim or right to sue on account of said funds so sent."

4th. That the Court erred in refusing to charge as requested by plaintiff's counsel, "That the holder of a check drawn on a bank where the drawer had funds, is entitled to receive the sum of money named in said check upon presenting it for payment at the bank upon which it is drawn." But qualified the charge asked, by adding the words: "But his right to bring an action upon the check against the bank is a different question."

5th. In refusing to charge as requested by plaintiffs counsel, "That when the holder of a check on a bank presents it for payment, and is informed by the proper officer that it is good, this amounts to an acceptance of the check."

6th. In refusing to charge, as requested by plaintiff's counsel, "That when the bearer of a check drawn on a bank, where the drawer has made a general deposit of money, which has not been drawn out, and, upon presentation, the proper officer admits the fact, and offers to pay the check, but requires the bearer to take particular funds of less value than those which were deposited, this is such an acceptance as binds the bank to pay the sum named in said check in funds equal in value to those which were deposited."

The refusal in the sixth ground was because there was no evidence that Jones had a general deposit at the bank.

A new trial was refused and that is assigned as error on said grounds.

HILLIARD & KING for plaintiff's in error. In suit by administrator defendant not competent witness: Code, sec. 3798. Bank taking general deposit liable to pay good funds: Ang & A., on Corp., sec. 243; 2 Wallace S. C. R., 252; 35th Ga. R., 8. Holder entitled to sum named in check and admision of funds by teller is acceptance: Bouv. L. Dic. acceptance, 9; 4th Erst. R., 67; 10th John., 207; 5 Mass. R. 6; 3d Kent Com., 83; Byles on Bills, 79th *ante.*

W. HOPE HULL for defendant.

WARNER, J.

If the offer by the bank to pay the check in Confederate Treasury notes, on its presentation, can be considered as an acceptance thereof by the bank, it was only an acceptance to pay it in such funds as the drawer had on deposit therein at that time, which the holder of the check *refused* to receive. And if the holder of this check declines to receive in payment

thereof such funds as the drawer had on deposit in the bank until after the drawer's account with the bank was closed, there was not such an *appropriation* of the funds of the drawer by the bank to the payment of *the plaintiff's debt*, as would preclude the bank from paying over to the drawer of the check the balance due him by the bank, in closing up his account. The facts of this case, do not show such a *wanton* and *fraudulent* refusal of the bank to pay the holder of the check in the funds deposited by the drawer thereof, as will make the bank liable. Although, we think the Court below erred in its charge to the jury in relation to the question of tender, and in relation to other points in the case, still, the verdict was right under the law applicable to the facts disclosed by the record, and the motion for a new trial was properly overruled.

Let the judgment of the Court below be affirmed.